UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DAVID TAYLOR, | ) | 1:06cv01663 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff David Taylor ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On April 17, 2007, the Honorable Oliver W. Wanger reassigned the case to the undersigned for all purposes

**FACTS AND PRIOR PROCEEDINGS[2]**

Plaintiff filed for disability insurance benefits and supplemental security income on November 6, 2003, alleging disability since April 2, 2003, due to auditory hallucinations. AR 62-64, 67-75, 427-429. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 44-47, 49-52, 53, 430, 431. On January 10, 2006, ALJ Christopher Larsen held a hearing. AR 435-480. He denied Plaintiff's claim on May 9, 2006. AR 10-21. On September 25, 2006, the Appeals Council denied review. AR 5-8.

Hearing Testimony

ALJ Larsen held a hearing on January 10, 2006, in Fresno, California. Plaintiff appeared with his attorney, Melissa Proudian. Vocational expert ("VE") Cheryl Chandler and Plaintiff's mother also appeared and testified. AR 435.

Plaintiff testified that he was 28 years old at the time of the hearing. AR 440. He has a driver's license, but only drives once in a while because it is exhausting. AR 441. He completed high school and got an AA degree. Plaintiff also received a firefighting certification in 1990 from the California Conservation Corp. AR 442. Plaintiff has previously worked as a firefighter, paper boy, data transcriber for the IRS, curb painter, and customer representative for U-Haul. AR 444-448. He was fired from U-Haul because he failed to follow instructions. AR 448-449.

Plaintiff believed that he could no longer work because he can't lift anything because his arms and muscles "just don't work anymore." He sleeps at night and sometimes stays in bed during the daytime. AR 451. He's "worn out" and explained that he sometimes thinks he needs a wheelchair. AR 451. Plaintiff hears people talking to him and sees things. His medication is getting rid of the voices. AR 451.

Plaintiff last used marijuana about eight months ago. AR 461. Prior to that, he'd use it "a little bit here and there." AR 462.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Plaintiff's mother testified that Plaintiff lived with her until he was 17, when he moved out for about a year. AR 464. She explained that he's a good son, and had no problems until he was 17, when he became very withdrawn and was sleeping a lot. He was put on medication and hospitalized for the first time. His symptoms progressed and one evening, he was acting "like a zombie person" and left home. Plaintiff was found a few days later at Valley Medical Center. AR 465. He would not make eye contact and he wasn't talking. Tests were normal and no drugs were found in his system. Plaintiff was turned over to the mental health unit and has been in and out of mental hospitals ever since. AR 465.

Despite his initial symptoms, Plaintiff was able to continue working and has had four jobs since the age of 17. He even had some psychotic episodes when he couldn't work, but he was put on medicine and was able to return to work. AR 466. While at Heald's College, where he was on the Dean's list, Plaintiff locked himself in the bathroom and became "animalistic." AR 467. She had to call for help to get him out and he was hospitalized for quite some time. AR 467. When he was stabilized, he returned to college and was able to finish. She explained that his illness has been intermittent, but has progressed since he was 17. AR 467. Plaintiff cannot do chores at home like he used to and he doesn't have the ability to focus or concentrate. AR 467. He hears voices and he sometimes paces around the house, talks to himself and goes off into his own world. Plaintiff has been in two different independent living homes but the living arrangements did not work because he needs some supervision. AR 468. He was leaving the stove on, wasn't changing his clothes and wasn't grooming himself. AR 468. Plaintiff has been at The Haskins Group Home ever since, which has supervised board and care, and has been doing pretty well. AR 469.

Plaintiff's mother explained that she is a single, working mother who expects her sons to go to college and work. Plaintiff's illness has been "odd" and she learned that it was part of his family history. AR 469. She believed that while his medication has helped his symptoms, it has made him weak, tired and shaky. AR 471.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and work experience. This person cannot reliably concentrate for two hours at a time,

3

cannot reliably understand, remember, or carry out simple one or two step job instructions, and would have difficulty responding appropriately to co-workers, supervisors and the general public. The VE testified that this person could not perform any of Plaintiff's past relevant work or any other positions in the national economy. AR 474-475.

If this person could understand, remember, and carry out simple one or two step job instructions, concentrate for two hours at a time over an eight hour workday, relate to others and adapt to simple changes, the VE testified that he could perform Plaintiff's past work as a firefighter, if the work was unskilled, and virtually all unskilled work. AR 475.

<u>Medical Record</u>

Plaintiff was admitted to Community Medical Center's Behavioral Health Center on April 20, 2003, after having anxiety and pacing uncontrollably due to an increase is his Risperdal. Plaintiff reported that he was fired from his job at U-Haul three weeks ago and has been worried about looking for a new job so he can repay his student loan. Plaintiff had a history of depression with psychosis on and off, as well as an extensive history of marijuana use. AR 193. He was admitted voluntarily and he improved once his medications were altered. His urine drug screen was positive for cannabis. AR 195. Plaintiff reported that he has used marijuana once a week for the past four years, smoking three joints each time, because he felt it helped his anxiety. His mother asked him to leave the house because of his continued use. AR 197.

Plaintiff was discharged on April 22, 2003, with an okay mood. His affect was constricted and he still had impaired insight, and fair judgment and impulse control. AR 195.

A urine screen in May 2003 was negative for THC. AR 212.

Plaintiff began seeing Jorge Urbina, M.D., on June 13, 2003. Plaintiff reported that he didn't have any problems currently because he was taking his medication. He reported that he had not used drugs for two months. AR 322. His mother reported that he was not well controlled on the medication because he was still talking to himself, pacing around the house, sleeping poorly and having sporadic auditory hallucinations. AR 320. On examination, Plaintiff's stream of thought was underproductive and he had sporadic auditory hallucinations. His mood was neutral with restricted affect. He was alert, but had poor attention and

concentration. Dr. Urbina diagnosed psychotic disorder, not otherwise specific, cannabis abuse in early remission, rule out schizophrenia, undifferentiated type. Dr. Urbina opined that drugs did not seem to be the inducing factor with the psychosis since he endorses psychotic features during periods of sobriety. Plaintiff has a biological disposition to mental illness. Plaintiff's Risperidone was increased and he was instructed to continue with the Fresno County Center for Recovery, Empowerment and Wellness ("CREW") program. AR 321-322.

Plaintiff returned to Dr. Urbina on July 18, 2003, and reported that he was feeling all right. He attends program everyday. AR 318.

Plaintiff saw Dr. Urbina on October 2, 2003. He was attentive and cooperative. His mood was neutral and his affect restricted. Dr. Urbina diagnosed schizophrenia, paranoid type and indicated that he was stable. AR 316.

Plaintiff saw Dr. Urbina on November 6, 2003. He complained that he had been hearing voices twice a week. Plaintiff admitted using marijuana. Plaintiff was symptomatic, but there were no grounds for a 5150 hold. AR 279.

November 6, 2003, notes from the CREW program indicated that Plaintiff was exhibiting decreased focus and symptomatic behavior in class. Sandra Nelson, LCSW, also expressed her concern over Plaintiff driving a car, explaining that he might not have the mental ability to drive given his confusion, lack of concentration and limited focus. AR 334.

A urine screen dated November 30, 2003, was negative for THC. AR 213.

Plaintiff saw Dr. Urbina on December 5, 2003. He reported feeling good. He goes to the "program" and takes his medications. Plaintiff denied using marijuana recently and was living at the rehabilitation home program. He had been hearing voices, but not that badly. He looked drowsy but was attentive. His mood was neutral with restricted affect. Dr. Urbina diagnosed schizophrenia, paranoid type, and believed that Plaintiff was stable. AR 278.

A urine screen dated December 31, 2003, was negative for THC. AR 213.

Urine screens dated January 14, 2004, and February 27, 2004 were also negative for THC. AR 213.

On February 24, 2004, Plaintiff underwent a psychiatric evaluatation performed by Shireen R. Damania, M.D. AR 140. Plaintiff volunteered little information, seemed disinterested in the interview and made poor eye contact. When asked when he last used marijuana, he stated that he "just got out of a program," where he was for three or four months, so he did a "small, small amount the other day." AR 141. In the past, he would smoke $20 worth of marijuana a week. He has been smoking about one ounce of marijuana every two weeks. He was not currently drinking alcohol, but could drink a "whole big bottle" in the past. He has not done any other drugs. AR 141. When asked about hearing voices, Plaintiff responded vaguely, stating that he hears "people talking." Dr. Damania spoke with Plaintiff's mother for further background information. She indicated that prior to age 17 or 18, Plaintiff was a good kid, intelligent in school and well liked. At that age, she noticed that he changed, becoming depressed and secluded. He began taking medication for depression and became better, but then began behaving very oddly. He began talking in a strange manner and would laugh and talk to himself. Since age 19, when he was classified as schizophrenic, he has been in and out of psychiatric hospitals. He was released from the "Sober House" the day before the interview. She reported that he continues to be seclusive and has difficulty focusing, although the voices are better since his Risperdal was increased.

On mental status examination, Plaintiff was mildly depressed and his affect was blunted. He was oriented to time, place and person, and memory for recent and past recall was grossly intact. His attention span was within normal limits and he was of average intelligence. His insight and judgment were mildly impaired.

In her assessment, Dr. Damania noted that although Plaintiff has a history of cannabis abuse, his mother gave credible information. She diagnosed psychotic disorder, not otherwise specified, versus schizophrenia, chronic undifferentiated type, and cannabis abuse, in early partial remission. His current G.A.F. was 50. Plaintiff's interpersonal skills and social functioning skills were impaired and in a work situation, he would have difficulties concentrating for two hour increments. He could understand, carry out and remember simple, as well as one and two step job instructions, but not on a consistent basis. Presently, he would have difficulty

6

responding appropriately to coworkers, supervisors and the public.  He would also have difficulty responding appropriately to usual work situations and dealing with changes in a routine work setting.  There were no physical findings of substance abuse, such as tremors, slurred speech or track marks, although Plaintiff yawned and stretched during the course of the interview.  Plaintiff's mother, a credible historian, indicated that Plaintiff's psychiatric difficulties persist, whether or not he uses cannabis.  Dr. Damania believed that if Plaintiff received financial benefits, he would not be able to handle the funds in his own best interest.  AR 144-145.

State Agency physician Robert Y. Hood, M.D., completed a Mental Residual Functional Capacity Assessment on April 26, 2004.  Dr. Hood opined that Plaintiff was moderately limited in almost all areas.  He was not significantly limited in his ability to understand, remember and carry out very short and simple instructions.  Dr. Hood explained that when Plaintiff uses drugs, he is not able to sustain an eight hour work day, interact with co-workers, supervisors or the general public, or concentrate for two hour increments.  When Plaintiff does not use drugs, Dr. Hood opined that he was moderately limited only in his ability to understand, remember and carry out detailed instructions.  He was not significantly limited in all other areas.  He could understand simple instructions, concentrate for two hour increments and complete tasks, relate to coworkers, supervisors and the public and adapt to simple work changes.  AR 258-261.  This opinion was affirmed on September 16, 2004.  AR 252-256.

Plaintiff was admitted to Community Medical Center's Behavioral Health Center on May 5, 2004, on a fourteen day hold pursuant to California Welfare & Institutions Code section 5150.  He was classified as gravely disabled.  Plaintiff admitted to using cannabis and alcohol on a regular basis for many months and last used prior to the hospitalization.  He was noncompliant with medication and takes psychotropics only when his mother gives them to him.  His admitting diagnoses were listed as psychotic disorder, not otherwise specified, rule out substance-induced psychotic disorder, alcohol abuse, and cannabis abuse.  His G.A.F. was 35.  AR 150.

On May 10, 2004, Plaintiff began to verbalize his feelings better.  He explained that he cannot work anymore because his body was bad and he couldn't handle the stress.  Plaintiff reported that being in the hospital made him feel better because he wasn't using cannabis and

that he would consider a drug rehabilitation program. AR 152. On May 13, 2004, Plaintiff again exhibited psychotic behavior, and was hearing voices and feeling paranoid.

On May 18, 2004, Plaintiff expressed a willingness for psychotropic medication and drug rehabilitation. On May 19, 2004, he was doing fine. He denied hearing voices for the past 24 hours. He agreed to go a rehabilitation program and sober-living home on discharge. AR 154.

Plaintiff was discharged on May 20, 2004. He was alert, oriented and coherent. Judgment was adequate and insight control was fair. He was discharged to Serenity Home, a sober-living home. He was taking Risperidone and Cogentin. His discharge diagnoses were listed as psychotic disorder, not otherwise specified, rule out substance-induced psychotic disorder, and cannabis dependence. His G.A.F. was 55. AR 150. Prathap Vaadyala, M.D., opined that Plaintiff's prognosis was guarded, depending on his compliance with the Chemical Dependency Rehabilitation Program and compliance with psychotropic medication. AR 155.

Plaintiff saw Dr. Urbina on June 7, 2004. Plaintiff reported that he was taking his medications as prescribed. Plaintiff's mother indicated that Plaintiff was looking better, but that she was concerned about the level of sedation. On mental status examination, Plaintiff was distractible. His speech was poor, affect blunted and mood "all right." Dr. Urbina diagnosed schizophrenia, paranoid type. He decreased his Risperdal and Cogentin doses to alleviate sedation. AR 268.

A urine screen dated June 8, 2004, was negative for THC. AR 212.

Plaintiff returned to Dr. Urbina on July 6, 2004. He denied doing drugs recently and reported that he was taking his medications and that they did not cause side effects. He was distracted and soft spoken. His affect was restricted and his mood was "all right." Dr. Urbina diagnosed schizophrenia, paranoid type, as well as depressive disorder. He noted that Plaintiff was stable, but that he seemed to conceal his symptoms. Plaintiff was started on Prozac and his other medications were continued. AR 272.

CREW progress notes from June and July 2005 indicate that Plaintiff continued to be isolative and had a significant impairment in interacting with others. AR 414-426. Notes from June 24, 2005, state that Plaintiff "continues to have problems with internal stimuli and isolation

which interferes with his thinking which interferes with his daily interactions and activities." AR 421.

Plaintiff saw Dr. Urbina on July 12, 2005. He said he felt "all right" and that he hears voices every once in a while before he goes to bed. He denied using marijuana recently and stated that he was compliant with his medications. During mental status examination, he displayed sporadic auditory hallucinations. Dr. Urbina noted that his cannabis abuse was in early remission and that he was stable. AR 412.

Plaintiff saw Dr. Urbina on October 6, 2005, and reported that he felt "all right." He said he was hearing less voices and denied using drugs recently. Dr. Urbina noted that his cannabis abuse was in remission and found him to be stable. AR 370.

During three group sessions in October 2005, Plaintiff was observed responding to internal stimuli and talking to himself. AR 361, 364, 372.

An undated letter from Adolfo Vidal, Plaintiff's case manager at Fresno County Department of Behavior Health, was submitted at the hearing. Mr. Vidal indicated that Plaintiff continues to undergo treatment for schizophrenia. Plaintiff was residing in a supplemental board and care home which requires a higher level of care "due to the severity of his symptoms which include auditory hallucinations that impair his insight and judgment." AR 138.

ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a psychotic disorder, not otherwise specified, and a substance abuse disorder. These impairments left Plaintiff with the residual functional capacity ("RFC") to perform only a very narrow range of jobs. Plaintiff could not reliably concentrate for two hours at a time, could not reliably understand, remember or carry out simple one or two step instructions, and would have difficulty responding appropriately to co-workers, supervisors and the general public. With this RFC, Plaintiff could not perform his past relevant work or any other work in the national economy. AR 14-17.

Based on the medical evidence of substance abuse, the ALJ continued his analysis to determine whether Plaintiff's substance abuse was a material contributing factor to the disability decision. The ALJ found that even if Plaintiff stopped abusing substances, he would continue to

have severe impairments. However, he would retain the RFC to perform a wide range of simple and repetitive work activity at all exertional levels. When not abusing drugs, Plaintiff could understand, remember and carry out simple one or two step job instructions, concentrate for two hours at a time, relate appropriately to others and adapt to simple changes in the workplace. AR 19. With this RFC, Plaintiff could not perform his past relevant work but could perform a significant number of jobs in the national economy. AR 17-20. Because Plaintiff would not be disabled if he stopped abusing substances, the ALJ determined that his substance abuse disorder was a contributing factor material to the determination of disability. AR 21. He was therefore not disabled. AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  In claims involving substance abuse, the ALJ must determine "if alcohol or drug addition would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  Applying this process in this case, the ALJ found that Plaintiff's substance abuse disorder was a contributing factor material to the disability determination.  Plaintiff was therefore not disabled.

Plaintiff argues that the ALJ erred in concluding that his marijuana use was a contributing factor material to the disability analysis.

## DISCUSSION

Plaintiff argues that he did not begin to use drugs until *after* his mental illness had been diagnosed and that the ALJ erred by finding that his marijuana use was a material contributing factor.  In support of his argument, he submits evidence dating back to 1995, when he had his first major psychiatric breakdown and his urine screens were negative.

A.   Legal Standard

A finding of "disabled" under the five-step inquiry does not automatically qualify a claimant for disability benefits.  Under provisions added to the Social Security Act in 1996, an "individual shall not be considered to be disabled for purposes of [benefits under Title II or XVI of the Act] if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. §§ 423(d)(2)(C),

1382c(a)(3)(J). The purpose of this addition was "to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy." *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir.2001).

An ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under 20 C.F.R. §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is "medical evidence of [his or her] drug addiction or alcoholism," then the ALJ must conduct a drug abuse and alcoholism analysis ("DAA Analysis") by determining which of the claimant's disabling limitations would remain if the claimant stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b). The Ninth Circuit has described this step as "separating out the impact" of the substance abuse. *Bustamante*, 262 F.3d at 955. The ALJ is not free to speculate, and as with any other aspect of the decision, his finding must be supported by substantial evidence. *Gibson v. Astrue*, 2008 WL 906700, *2 (D.Ariz. 2008). If the ALJ is able to separate out the impact of substance abuse, he must then determine whether the remaining limitations would still be disabling. *Bustamante*, 262 F.3d at 955. If they would be, then the claimant's drug addiction or alcoholism is not a contributing factor material to his disability and he is entitled to benefits. *Id.* If the remaining limitations would not be disabling, then the claimant's substance abuse is material and benefits must be denied. 20 C.F.R. § 404.1535(b); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007).

B.   <u>Analysis</u>

After finding Plaintiff disabled at step five, the ALJ moved on to the DAA analysis and found that if he stopped abusing substances, he would retain the RFC to perform a wide range of simple and repetitive work at all exertional levels. AR 19. Because this would result in a finding that Plaintiff was not disabled, the ALJ found that his substance abuse disorder was a contributing factor material to the determination of disability and denied benefits. AR 21.

Plaintiff disputes this outcome solely on the basis of the ALJ's interpretation, and alleged omission, of certain evidence. He cites evidence that he believes demonstrates that he would

remain disabled even if he stopped using marijuana, such as his history of schizophrenia prior to his drug use, his firing from U-Haul, two conservatorship hearings and medical evidence showing that his symptoms persisted despite periods of being clean.

As explained above, the ALJ's determination that Plaintiff's substance abuse is a contributing material factor must be supported by substantial evidence. For the reasons discussed below, the ALJ's analysis was inadequate.

The Court's review begins with an undisputed premise- Plaintiff's severe psychotic symptoms began prior to his drug use. It is also undisputed that Plaintiff has a substance abuse disorder and continued to use marijuana sporadically during the period at issue. Nonetheless, the ALJ's evidence listed in support of his finding that his drug use was a material factor is incomplete, selective and far from substantial.

The ALJ begins his analysis with the statement, "Mr. Taylor's symptoms are considerably improved when he is not abusing drugs." AR 19. He continues, "On September 5, 2002, when Mr. Taylor was not using drugs, he had three part-time jobs (Exhibit 3F, p. 28)." AR 19. While this may be true, the majority of the evidence establishes that the severity of Plaintiff's disorder varies. Indeed, his initial diagnosis and at least one of his early hospitalizations came prior to his drug use, making the ALJ's inference not well supported.

The ALJ next finds that through October 2003, his treating psychiatrist repeatedly diagnosed Plaintiff as stable. AR 19. The ALJ again makes an inference while ignoring the related evidence. The ALJ is correct that Dr. Urbina noted in July, September and October 2003 that Plaintiff was stable. AR 316, 317, 319. Despite this, Plaintiff's diagnoses of schizophrenia continued. Mental status examinations showed that he had some distractibility, his mood was fair and his affect restricted. AR 316, 317, 319.

Given the totality of the medical evidence, the ALJ puts too much weight on the word "stable." In fact, he completely ignores Dr. Urbina's initial treatment notes from June 13, 2003, when mental status examination showed that he was easily distractible, provided irrelevant answers at times, had a tendency to repeat questions, an underproductive stream of thought, sporadic auditory hallucinations, and poor attention and concentration. AR 321. At that time,

Plaintiff stated that he had not used marijuana for two months. AR 321. His claim was supported by a negative urine screen in May 2003 (also ignored by the ALJ). Dr. Urbina explained that Plaintiff presented with residual psychotic symptoms. He further stated that although Plaintiff has a history of drug use, he has been sober for about two months yet he endorses psychotic symptoms during periods of sobriety, leading Dr. Urbina to the conclusion that drugs do not seem to be the inducing factor for his psychosis. AR 322.

The ALJ next cites Plaintiff's deterioration on November 6, 2003, when he began using marijuana again. AR 19. The record does support an inference that his symptoms increased when be began using again, but this does not translate into a finding that absent the marijuana use, he retained an RFC that would allow for work. Moreover, the ALJ ignores the December 5, 2003, mental status examination that revealed auditory hallucinations, paucity of thinking, neutral mood and restricted affect despite a negative urine screen on November 30, 2003. AR 213, 278. Urine screens in December 2003 and January 2004 were also negative (and not mentioned by the ALJ). AR 213.

The ALJ also cites Dr. Damania's February 24, 2004, consultive examination, explaining that he gave it little weight because Plaintiff's "ongoing drug abuse at that point was unknown" to the examiner, "as evidenced by the examiner's diagnosis of 'cannabis abuse in early partial remission.'" AR 19. Yet Dr. Damania's report does not support the ALJ's statement. She indicated that she reviewed the April 20, 2003, report which referenced a history of marijuana abuse. Plaintiff also told her that he was "addicted to marijuana" and last did "a small, small amount the other day." AR 141. He reported that he has been smoking marijuana, about one ounce every two weeks. AR 141. Dr. Damania also interviewed Plaintiff's mother, who gave a detailed history of Plaintiff's psychiatric symptoms and drug use. AR 142-143. Dr. Damania was therefore well aware of Plaintiff's history, despite the ALJ's claim to the contrary. Nor does her diagnosis of "cannabis abuse in early partial remission," support the ALJ's statement, as her diagnosis contains both the words *early* and *partial*.

The ALJ also ignores many aspects of Dr. Damania's report. Despite a negative urine screen the week before the examination (also ignored by the ALJ), his speech was

underproductive, his mood was mildly depressed and his affect was blunted. His insight and judgment were mildly impaired. AR 142-143. In her assessment, Dr. Damania explained that "although [Plaintiff] has a long history of cannabis abuse, the mother gives credible information," and she indicated that the psychiatric difficulties persist, whether or not he uses. AR 143, 145.

In rejecting Dr. Damania's opinion, the ALJ adopted the opinion of the State Agency physician as "consistent with the record as a whole." For the reasons discussed above, however, a finding that Plaintiff retained an RFC that would allow him to perform work is not supported by, or consistent with, the medical record. The ALJ's reliance on the State Agency physician's opinion, over that of consultive examiner Damania, and his failure to even address Dr. Urbina's opinion as to the effect of Plaintiff's drug use, are legal error. The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984).

The ALJ's materiality determination is not free of legal error and is not supported by substantial evidence. Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. In this action, the record as a whole demonstrates that the severity of Plaintiff's mental disorder varies and while his marijuana use likely plays a role, the evidence, if any, that Plaintiff's impairments would not be disabling if he stopped using drugs is not substantial. *See eg., Gibson*, at * 2 (explaining that although the Ninth Circuit has not addressed the issue, the Eighth Circuit has held that if the ALJ is unable to separate out the impact of substance abuse, the claimant is entitled to benefits). This is especially true given the sporadic nature of his drug use.

## **REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

In this case, the VE testified that an individual with the RFC assigned by the ALJ when considering Plaintiff's marijuana use, could not perform any work. Accordingly, a remand for further proceedings would serve no useful purpose. The action is therefore REMANDED FOR the PAYMENT OF BENEFITS.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not free of legal error and is not supported by substantial evidence. The action is therefore REVERSED and the case is REMANDED for PAYMENT OF BENEFITS. The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff David Taylor and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 7, 2008**                     /s/ **Dennis L. Beck**
                                                          UNITED STATES MAGISTRATE JUDGE